*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ROWAN B., Sr. and RISA F., | ) | |
| | ) | Supreme Court No. S-15107 |
| Appellants, | ) | |
| | ) | Superior Court Nos. 3PA-12-00057, |
| v. | ) | 3PA-12-00058, and 3PA-12-00059 CN |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 6881 – March 21, 2014 |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances:  Rachel Cella, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant Rowan B., Sr.  Michael A. Rose, Frontier Law Group, LLC, for Appellant Risa F.  Joanne Grace, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

# I. INTRODUCTION

Rowan B., Sr. and Risa F. appeal the adjudication of their children as children in need of aid.[1] The adjudication was based on allegations that Rowan had physically and sexually abused their daughter and Risa's daughters from an earlier relationship and that Risa was too mentally ill to care for the children. Risa challenges the finding that her mental illness prevents her from adequately parenting the children. Rowan raises numerous challenges to the trial court's actions, including arguments about notice and denial of materials during discovery. We hold that the trial court erred in denying Rowan access to materials he sought through discovery without at least conducting an in camera review. We retain jurisdiction and remand the case to the trial court for further limited proceedings.

# II. FACTS AND PROCEEDINGS

Rowan and Risa are the divorced parents of three children: Agnes, Rowan Junior (Junior), and Saul. Risa suffers from schizoaffective bipolar disorder, which she does not always treat as prescribed. After the parties divorced in 2006, Rowan had custody of the parties' three children as well as Risa's two older children, Aeryn and Reagan, who now are adults. The State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS) had contact with the family at the time the parents divorced, but OCS released the children to Rowan after working with him for a period of time.

In 2012 Aeryn reported that Rowan had sexually and physically abused both her and Reagan over a number of years. She said she did not report the abuse earlier because she was "afraid for [her] life" due to Rowan's threats. Aeryn said Rowan impregnated her when she was 17 and threatened to kill her with a two-by-four; she left

---

[1] We use pseudonyms to protect the privacy of the parties.

the home the next day. Aeryn also said that Rowan had beaten Risa but used Risa's mental illness against her when Risa reported the abuse.

Aeryn became concerned that Rowan was sexually abusing Agnes, and when Agnes was visiting Risa for the summer, Aeryn asked Agnes about it. Although Agnes initially denied any abuse, Aeryn later took Agnes to Alaska CARES, where Agnes detailed several years of sexual and physical abuse by Rowan.

Agnes said that Rowan began sexually abusing her when she was 11 and that Rowan put his penis in her vagina the first time he had sexual contact with her. She described other sexual abuse as well. Agnes also reported that Rowan physically abused her by hitting her with his hands, a belt, and an extension cord. She described seeing Rowan sexually abuse Reagan once, when Agnes was "little." Agnes said that Junior was Rowan's favorite child and as a result received little punishment. She indicated that Rowan sometimes spanked Saul "on the butt" with his hand when Saul misbehaved.

OCS removed Junior and Saul from Rowan's home in June 2012; Agnes had not returned to Rowan's home and was living with Aeryn. OCS filed an emergency petition for custody of all three children shortly afterwards. The emergency petition alleged that the children were in need of aid under several subsections of AS 47.10.011, including subsections (6) (physical harm), (7) (sexual abuse or risk of sexual abuse), (8) (mental injury), (10) (parental use of intoxicants), and (11) (parental mental illness).

Before the adjudication hearing, Rowan moved the court to order the Alaska State Troopers (AST) and the Anchorage Police Department (APD) to release "copies of all reports, records, and recordings" about the children or about their parents to assist him in preparing for trial.[2] AST opposed the motion on the grounds that the

---

[2]     The record does not show that Rowan attempted to obtain the information any other way, such as by scheduling a deposition, before making his motion.

only records it possessed were protected under exceptions to disclosure listed in the Alaska Public Records Act,[3] but it expressed willingness to provide some of the records to the trial court for in camera review if the court thought it necessary. APD responded that the request was overly broad and was premature because Rowan had not subpoenaed the records. Rowan then said he was willing to work with APD to narrow the scope of his request "if appropriate." The trial court did not conduct an in camera review or explain why it did not do so; instead it denied the motion in its entirety based on the two cited subsections of the Alaska Public Records Act.

The contested adjudication hearing was held over three days in January and February 2013. At the hearing, OCS informed the court it would be proceeding under AS 47.10.011(7) (sexual abuse or risk of sexual abuse) applicable to Rowan and under AS 47.10.011(11) (parental mental illness) applicable to Risa. After the parents made their opening statements, the guardian ad litem (GAL) told the court she would ask the court to make findings under the following AS 47.10.011 subsections: (6) (physical harm) and (8) (mental injury) against both parents, (7) (sexual abuse or risk of sexual abuse) against Rowan, and (11) (parental mental illness) against Risa. The GAL participated in the hearing but did not testify, call any witnesses, or introduce any exhibits.

Aeryn and Agnes both testified about Rowan's physical and sexual abuse. Two healthcare providers testified about Risa's mental illness and her treatment. Dana Overfelt, the primary OCS social worker assigned to the case, testified about the parents' case plans, OCS's efforts to help the family, and prior contacts between OCS and the family.

---

[3]     AS 40.25.100-.295. AST relied on AS 40.25.120(a)(2), records pertaining to juveniles, and (a)(6), law enforcement records.

Rowan initially planned to testify, but after the judge warned him that whatever he said could be used in a potential criminal case, he decided not to testify. His attorney indicated that Rowan's decision not to testify was influenced by his inability to get the documents he had requested from law enforcement in his discovery motions. Rowan's only witness was a visitation supervisor from the Anchorage OCS office; she said that visitation was going well and that Rowan was appropriate with the boys.

During closing, OCS asked for findings for all three children under subsections (7) (sexual abuse or risk of sexual abuse) and (11) (parental mental illness). Because only Agnes had been sexually abused, it asked the court to rely on *In re P.N.*[4] to find that Junior and Saul were children in need of aid under the "risk of sexual abuse" provision of AS 47.10.011(7). In his closing argument Rowan attacked the credibility of Aeryn and Agnes, argued that there was no evidence he had in any way mistreated Junior or Saul, and again raised the issue of the court's denial of access to police records. He also argued that because Agnes did not want to live with him, the court could find that she was a child in need of aid under AS 47.10.011(5), the subsection about runaways.

After the parents finished their closing arguments, the GAL asked the court to find the children to be children in need of aid under AS 47.10.011's subsections (4) (failure to provide needed medical care), (6) (physical harm), (7) (sexual abuse or risk of sexual abuse), (8) (mental injury), and (11) (parental mental illness). Rowan's attorney asked the court for extra time for argument after the GAL's argument because of the GAL's request for findings under additional subsections that OCS had not mentioned; the court did not grant extra time. The court decided the parents were given

---

[4]    533 P.2d 13, 16 (Alaska 1975) (holding that father's sexual abuse of daughter demonstrated serious disregard of parental responsibilities and lack of social and moral values that posed substantial risk of harm to sons).

adequate notice of the possibility of findings under subsections (6) (physical harm) and (8) (mental injury) because the GAL mentioned them in her opening statement.

The trial court adjudicated the children to be in need of aid under AS 47.10.011's subsections (6) (physical harm), (7) (sexual abuse or risk of sexual abuse), (8) (mental injury), and (11) (parental mental illness). The court found that subsections (6), (7), and (8) applied to Rowan, relying on his "chronic ongoing physical and sexual abuse . . . against his daughters." The court noted it "believe[d] the abuse did occur" because of "the compelling and convincing nature of the testimony." The court also found that Junior and Saul had witnessed Rowan physically abusing Agnes. The court found the children to be in need of aid under subsection (11) based on Risa's mental illness. The court found that it was in the children's best interests to be in OCS's temporary custody pending disposition. Rowan moved for reconsideration, and the court denied the motion. The court later issued a disposition order giving OCS custody of the children for up to two years.

## III.   STANDARD OF REVIEW

We interpret court rules de novo.[5] We review de novo whether a trial court considered the appropriate factors in issuing a discovery order.[6] "We review issues of statutory and constitutional construction de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[7]

---

[5]     *Rhodes v. Erion*, 189 P.3d 1051, 1053 (Alaska 2008).

[6]     *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 594 (Alaska 2007) (citing *Peter v. Progressive Corp.*, 986 P.2d 865, 867 (Alaska 1999)).

[7]     *Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1267 (Alaska 2013) (citing *Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1014 (Alaska 2010)).

## IV. DISCUSSION

### A. Rowan's Discovery Motion

Rowan argues that the trial court denied him due process by denying his motion for production of records from law enforcement without conducting an in camera review. In response, OCS frames the issue not as a constitutional matter, but rather as a discovery dispute and argues that the standard of review should be abuse of discretion; it argues in the alternative that even if the trial court abused its discretion, Rowan has not shown that the error harmed him. In his reply brief, Rowan contends that even under an abuse of discretion standard the trial court's ruling should be reversed.

With limited exceptions not applicable here, the discovery provisions of Alaska Civil Rules 26-37 and 45 apply in child in need of aid (CINA) cases.[8] We have previously held that "the civil rules are committed to a system of liberal pretrial discovery."[9] Although AST raised the issue of the Alaska Public Records Act, Rowan did not make a request for records as a member of the general public; his motion was for discovery directly relevant to the civil proceeding against him. Civil Rule 26(b)(1) provides that a party "may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action." As part of the discovery process, a party can, with few exceptions, depose and obtain relevant documents from any person who may have information relevant to the litigation.[10]

---

[8] CINA Rules 1(e) and 8(b).

[9] *Jones v. Jennings*, 788 P.2d 732, 735 (Alaska 1990) (citing *United Servs. Auto. Ass'n v. Werley*, 526 P.2d 28, 31 (Alaska 1974)).

[10] Alaska R. Civ. P. 30-31, 45. We recognize that Rowan apparently did not first attempt to conduct a records deposition in this case, but OCS does not raise this procedural issue as a reason to deny his request and it seems likely that had Rowan

(continued...)

Although we previously have construed the Public Records Act,[11] we have not considered the interaction between the exceptions to disclosure in that statute and civil discovery rules. Both provide access to information, but they do so for different reasons and provide different types of access. As one federal court wrote in relation to the federal Freedom of Information Act (FOIA):[12]

> The FOIA furthers the public's general right to know and ensures government accountability. Discovery discourages unfair surprise and delay at trial. In the FOIA context, the requesting party's need for the information is irrelevant . . . . In the discovery context, when qualified privilege is properly raised, the litigant's need is a key factor. Whether the information is disclosed depends on the relative weight of the claimant's need and the government's interest in confidentiality.[13]

Here the trial court denied all access to the information Rowan requested in his discovery motion, relying on exceptions to disclosure in the Public Records Act instead of analyzing the discovery request under the Civil Rules. There is no indication in the trial court's order that it considered whether Rowan's need for the information as a litigant outweighed the law enforcement agencies' interests in not disclosing it. This was legal error and requires a remand to the trial court.

---

[10] (...continued) sought records depositions, the parties would have been before the trial court in exactly the same posture attempting to resolve the discovery dispute.

[11] *See, e.g.*, *Gwich'in Steering Comm. v. State, Office of the Governor*, 10 P.3d 572 (Alaska 2000).

[12] 5 U.S.C. § 552 (2012). We have noted some parallels between the FOIA and the Public Records Act. *Gwich'in Steering Comm.*, 10 P.3d at 577 n.6.

[13] *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984).

We note that Rowan apparently now has been charged criminally with numerous counts of child sexual abuse and presumably has been provided in his criminal case with much, if not all, of the information he sought through discovery in the CINA case.[14] If any information requested in the CINA discovery motion and identified by the law enforcement agencies has not been provided to him, the court should order law enforcement to provide him with the information or make a claim of privilege or other protection with respect to that information. The trial court then can conduct an in camera review of documents to assess any claim of privilege or other protections.[15] After Rowan's discovery requests have been resolved, he should be given the opportunity to bring any information obtained through discovery in his criminal case and in this case to the attention of the trial court. The trial court then must review any new information to determine whether the new information changes the trial court's determination that the children are in need of aid under any statutory basis relied upon.

## B. Application Of AS 47.10.011(7)

Because we are remanding this case to give Rowan an opportunity to present evidence previously unavailable to him, we do not consider whether the trial court's finding that Junior and Saul are at substantial risk of sexual abuse is clearly erroneous. But we clarify the legal standard to be applied when a parent is found to have sexually abused one child in the household.

Rowan argues that the trial court erroneously found Junior and Saul to be children in need of aid under AS 47.10.011(7) (risk of sexual abuse) by relying on *In re*

---

[14]    *See* Alaska R. Crim. P. 16(b) (setting out discovery available to accused in criminal case).

[15]    *See In re Mendel*, 897 P.2d 68, 75 (Alaska 1995) (setting out procedure for in camera review when work-product privilege is claimed); *see also Honda Motor Co. v. Salzman*, 751 P.2d 489, 492-93 (Alaska 1988) (discussing protection for trade secret).

*P.N.*,[16] which he claims no longer is applicable because of statutory changes; he contends that the court's finding that he sexually abused the girls does not make the boys children in need of aid under subsection (7). OCS responds that this court "still accepts the foundational principles of" *In re P.N.* and that the trial court's findings about Rowan's sexual abuse of the girls is adequate support for its finding that the boys are at substantial risk of being sexually abused.

In *In re P.N.* the trial court had found all of the children, including three boys, to be in need of aid because the father admitted having sexually abused his ten-year-old daughter.[17] We decided there was

> support for the finding of dependency in that the [father's] treatment of the girl could be considered to have evidenced such a serious disregard of parental responsibilities and lack of social and moral values on [the father's] part as to pose a substantial risk to the physical and emotional well-being of the boys as well as the girl.[18]

The statutory basis for our decision was former AS 47.10.010(a)(5),[19] which provided that a child was in need of aid when the child "lack[ed] proper parental care by reason of faults, habit or neglect of his parent, guardian or custodian."[20] This statutory basis for CINA status was later repealed.[21]

---

[16]    533 P.2d 13 (Alaska 1975).

[17]    *Id.* at 16.

[18]    *Id.*

[19]    *Id.*

[20]    *In re S.D.*, 549 P.2d 1190, 1194 (Alaska 1976) (quoting former AS 47.10.010(a)(5) (1975)).

[21]    *See In re J.M.*, 573 P.2d 1376, 1377 n.1 (Alaska 1978) (noting repeal of
(continued...)

Alaska Statute 47.10.011(7), on the other hand, allows a court to find a child to be a child in need of aid when "there is a substantial risk that the child will suffer sexual abuse, as a result of conduct by or conditions created by the child's parent." Under AS 47.10.011(7), a parent's allowing a child to be left with a person having a history as a sex offender or who is under investigation for a sex offense against a minor establishes a prima facie case that the child is at substantial risk of sexual abuse. But the statute does not specify that parental conduct toward a child's siblings would constitute prima facie evidence of a substantial risk of sexual abuse, nor does it define what constitutes substantial risk of sexual abuse.[22]

Noting that the legislature included parental conduct toward siblings in the definition of neglect,[23] Rowan asks us to apply the maxim of statutory construction *expressio unius est exclusio alterius* to decide that the legislature did not intend the sexual abuse of one sibling to be a basis for a finding that other children in the same household are at risk of sexual abuse. We decline to do so. We also reject Rowan's argument that the legislature intended to overrule *In re P.N.* when it revised the CINA statutes. The legislature did not list *In re P.N.* as a case it intended to overrule,[24] and

---

[21]     (...continued)
former AS 47.10.010(a)(5)).

[22]     *Cf.* AS 47.10.015 (setting out when court may find physical harm or substantial risk of physical harm). AS 47.10.990(31) defines "sexual abuse" for purposes of AS 47.10.011.

[23]     AS 47.10.011(9) permits a court to find a child to be in need of aid when "conduct by or conditions created by the parent . . . have subjected the child or another child in the same household to neglect."

[24]     The legislature listed several cases it intended to overrule when it revised the statute in 1998 to change the bases on which a child could be found in need of aid, (continued...)

Rowan points to no affirmative statement in the statute or the legislative history indicating any disagreement with the reasoning of that case.

As one court has observed, courts "overwhelmingly" have decided that a parent's sexual abuse of one child in the household is substantial evidence that the other children are at risk of sexual abuse.[25] Similar to our reasoning in *In re P.N.*, the California Court of Appeal has held that a father's "conduct [was] 'so sexually aberrant' to support the common sense conclusion that most every person in the family home was at risk of sexual abuse."[26] Although the statutory basis for CINA status now may be different than it was in *In re P.N.*, we continue to adhere to the principles underlying that case, and consequently we hold that when a trial court finds a parent has sexually abused one child in the household, the court may presume that other children in the household are at substantial risk of sexual abuse.

The statutory language supports our construction of the statute. Alaska Statute 47.10.011(7) provides that a parent's leaving a child in the care of someone who the parent knows is under investigation for child sexual abuse is "prima facie evidence that the child is at substantial risk of being sexually abused." It would not make sense

---

[24]     (...continued)
including *In re S.A.*, 912 P.2d 1235 (Alaska 1996) and *R.J.M. v. State*, 946 P.2d 855 (Alaska 1997). *See* ch. 99, §§ 1, 18, SLA 1998.

[25]     *Los Angeles Cnty. Dep't of Children & Family Servs. v. Superior Court of Los Angeles Cnty.*, 156 Cal. Rptr. 3d 502, 506 (Cal. App. 2013) (reversing trial court's denial of dependency petition); *see also In re I.J.*, 299 P.3d 1254, 1262 (Cal. 2013) (construing California statute as not requiring scientific or empirical evidence for finding that male children are at risk of sexual abuse when their sister has been sexually abused by father).

[26]     *In re Ana C.*, 139 Cal. Rptr. 3d 686, 698 (Cal. App. 2012) (quoting *In re Karen R.*, 115 Cal. Rptr. 2d 18, 22 (Cal. App. 2001)).

for a child to be considered at risk of sexual abuse when left in the care of someone who has been convicted of a sex offense or is under investigation for sexual abuse, but the same child not to be considered at risk of sexual abuse when it is the parent under investigation for sexual abuse or found to have sexually abused another child in the household.

If on remand Rowan still is under investigation or subject to criminal charges for sexual abuse of a minor, the trial court may apply the statutory presumption that Junior and Saul are at substantial risk of being sexually abused.[27] And if the trial court again finds that Rowan sexually abused Agnes, it can conclude that Junior and Saul are at substantial risk of being sexually abused.[28]

## V.    CONCLUSION

We REMAND this case to the trial court for proceedings consistent with this opinion. Jurisdiction is RETAINED.

---

[27]    AS 47.10.011(7).

[28]    Because we are remanding the case for further proceedings and retaining jurisdiction, we do not now address Risa's challenge to the trial court's findings about the children being in need of aid due to her mental illness. We likewise do not now evaluate Rowan's arguments about the adequacy of the evidence to support findings under other statutory subsections. *See Martha S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 268 P.3d 1066, 1080 (Alaska 2012) (citing *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 762 (Alaska 2009)) (holding that only one statutory basis is required to find a child in need of aid).