# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 11, 2014 Session

## STEPHEN MICHAEL WEST, ET AL. V. DERRICK D. SCHOFIELD, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 131627I    Claudia Bonnyman, Chancellor

---

### No. M2014-00320-COA-R9-CV - Filed September 29, 2014

---

This case asks us to interpret an exception to the Tennessee Public Records Act, Tennessee Code Annotated section 10-7-504(h), to determine whether it creates a privilege protecting the identities of persons involved in carrying out a sentence of death from pretrial discovery. This question arises from litigation in which Appellees, who are death row inmates, challenge the constitutionality of the Tennessee Department of Correction's Execution Procedures for Lethal Injection on various grounds. In prosecuting their case, Appellees requested the identities of certain John Doe Defendants involved in the execution process, but the State refused to produce this information. On a motion to compel, the trial court ordered the disclosure of the John Doe Defendants' identities subject to an agreed protective order. We find the information sought by Appellees is relevant and is not privileged under Tennessee Code Annotated section 10-7-504(h). The decision of the trial court is affirmed.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Robert E. Cooper, Attorney General and Reporter; Joseph F. Whalen, Solicitor General; Kyle Alexander Hixson, Assistant Attorney General; Andrew Hamilton Smith, Assistant Attorney General; and Nicholas White Spangler, Assistant Attorney General, Nashville, Tennessee, for the appellants/defendants, Derrick D. Schofield, Wayne Carpenter, Tony Mays, Jason Woodall, Tony Parker, John Doe Physicians 1-100, John Doe Pharmacists 1-100, John Doe Medical Examiners 1-100, John Doe Medical Personnel 1-100, John Doe Executioners 1-100, and Tennessee Department of Corrections.

Stephen M. Kissinger and Helen Susanne Bales, Knoxville, Tennessee, for the appellees/plaintiffs, Stephen Michael West, Nicholas Todd Sutton, David Earl Miller, and Olen Edward Hutchison.

Carl Eugene Shiles, Jr. and William J. Rieder, Chattanooga, Tennessee, for the appellee/plaintiff, Billy Ray Irick.

Kelly Jane Henry and Michael J. Passino, Nashville, Tennessee, for intervening appellees/plaintiffs, Abu-Ali Abdur'Rahman, Donald R. Johnson, Donald Wayne Strouth, Charles Walton Wright, and Edmund George Zagorski.

Kelly A. Gleason, Nashville, Tennessee, for intervening appellee/plaintiff, Lee Hall, Jr.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

On November 20, 2013, Stephen Michael West and four other death row inmates, Billy Ray Irick, Nicholas Todd Sutton, David Earl Miller, and Olen Edward Hutchison, filed a Complaint for Declaratory Judgment. Six additional death row inmates, Edmund Zagorski, Abu-Ali Abdur'Rahman, Charles Wright, Donald Johnson, Lee Hall, Jr., and Donald Strouth, subsequently filed unopposed motions to intervene in this action, which were granted by the trial court. The Plaintiffs/Appellees contended that the Tennessee Department of Correction's Execution Procedures for Lethal Injection ("Protocol") violates the Eighth and Fourteenth Amendment of the United States Constitution and Article I, § 16 of the Tennessee Constitution, as well as state and federal laws in a six-count complaint. Appellees' six counts alleged that: (1) the Protocol causes "death over a prolonged period of time"; (2) the Protocol creates a substantial risk that the drugs will be contaminated or impure, thereby creating an unnecessary risk of pain and suffering, and the use of compounded pentobarbital as required by the Protocol creates a substantial risk that the drugs will lack potency; (3) the persons carrying out the Protocol lack proper training, guidance, and experience to carry out their assigned tasks; (4) the Protocol requires the persons carrying it out to follow practices and procedures that create a substantially increased risk of undetected infiltration when compared to a recognized standard of care for lethal injections, making it even more likely to cause Appellees to suffer a lingering death; (5) the Protocol requires the persons carrying it out to intentionally violate state and federal drug laws; and (6) that Tennessee Code Annotated section 10-7-504(h)(1) violates Appellees' constitutional right of access to the courts and due process to the extent it prevents the disclosure of information pursuant to a lawful court order.

The Appellants/Defendants in this case are Derrick D. Schofield, Wayne Carpenter, Tony Mays, Jason Woodall, and Tony Parker in their official capacities, as well as the individuals responsible for implementing the process of executing a sentence of death, identified as John Doe Physicians 1-100, John Doe Pharmacists 1-100, John Doe Medical

Examiners 1-100, John Doe Medical Personnel 1-100, and John Doe Executioners 1-100 ("John Doe Defendants"). The Attorney General's Office accepted service on behalf of the named defendants on November 20, 2013. Initially, the Attorney General declined to accept service on behalf of John Doe Defendants because it was unknown whether they were State employees, individuals acting under color of state law, or merely subcontractors.

On November 26, 2013, to facilitate service on the John Doe Defendants, the trial court entered a Case Management Order directing Appellees to "immediately make a formal discovery request to the State, requesting the identities of the [unserved defendants]." The Order further required the parties to draft a protective order intended to shield this identifying information from public view. Appellees served their First Set of Interrogatories on the same day, requesting the identities of John Doe Defendants in compliance with the Case Management Order. On November 27, 2013, the Attorney General agreed to accept service on behalf of John Doe Defendants.

The trial court held a scheduling conference by telephone on December 2, 2013, which was the deadline for Appellants to respond to Appellees' First Set of Interrogatories. At the conference, the parties agreed to submit a protective order concerning the identities of John Doe Defendants and to allow Appellants until December 4, 2013, to respond to Appellees' interrogatories.

Appellants responded to Appellees' First Set of Interrogatories on December 4, 2013. They objected to each of Appellees' requests for the identities of John Doe Defendants, maintaining that they were not relevant to Appellees' challenge to the Protocol and that they are confidential under the Tennessee Public Records Act. Specifically, the objection read as follows:

> The identity of the individual described in this interrogatory is neither relevant nor material to the [Appellees'] ability to challenge the protocol employed in executing a sentence of death and is specifically deemed confidential under state law. *See* Tenn. Code Ann. § 10-7-504(h); Tenn. R. Civ. P. 26.02(1). Such information is also subject to redaction "wherever possible" pursuant to Tenn. Code Ann. § 10-7-504(h)(2). [Appellants'] interest in maintaining the confidentiality of persons directly involved in the execution process thus outweighs [Appellees'] need for the discovery request.

In lieu of revealing the identities of John Doe Defendants, Appellants offered to allow Appellees to conduct screened depositions and to provide information regarding the education, training, and certifications of John Doe Defendants.

Appellants also moved the trial court to adopt a proposed Agreed Protective Order, which the trial court entered on December 5, 2013. The Protective Order prevents the parties from revealing the identities of John Doe Defendants "except to the extent essential to conduct the proceedings at issue in this case." It further states, "[s]aid confidential information shall not be disclosed to any person other than counsel of record, staff, and any experts consulted or retained by a party who will be informed of, provided with and shall be bound by the terms of this Court's protective order."

Appellees filed a Motion to Compel Responses to Plaintiffs' First Set of Interrogatories on December 13, 2013, seeking the identities of John Doe Defendants. The trial court held a hearing on the issue and granted Appellees' motion in an Order filed January 8, 2014. The trial court's order provided:

> [T]he [Appellants] shall fully and completely answer [Appellees'] First Set of Interrogatories. Such response shall include, but not be limited to, the identity and location of all John Doe defendants who had been scheduled to participate, and/or had already participated in, the execution of Plaintiff Billy Ray Irick that had been formerly set for January 7, 2014, and/or all persons who, as of that date, had agreed, or tentatively agreed, whether formally or informally, to act in the capacity of those John Doe defendants described in [Appellees'] First Set of Interrogatories. Upon agreement of [Appellants'] counsel, this order shall also apply to Intervening [Appellees'] First Set of Interrogatories. This round of discovery is governed by and subject to the Protective Order to which the parties agreed.

Appellants sought and received the trial court's permission to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. During the hearing regarding Appellants' motion for interlocutory appeal, the court further expounded on its reasoning for granting Appellees' motion to compel:

> As for relevancy of the identities, the Court is relying on Rule 26.02, which specifically mentions the fact that identity and location of persons having knowledge of any discoverable matter is a subject of foundational basic discovery. . . .
>
> . . . .
>
> Now, I take seriously the fact that the legislature has stated that as for the general public, papers involving or papers that might reveal the identity of the execution team and pertinent other persons, such as pharmacists and that

-4-

sort of thing, are going to be protected to the extent possible that - - but that, the public is going to get to have some information, but their identity is going to be redacted.

. . . .

But there are lots of values here that have been set by the legislature and by the courts that have to be balanced. And so I do take seriously the fact that this information is sensitive.

I also note that in discovery it is common for trial judges to deal with the dilemma of the fact that information is sensitive and the public doesn't have a right to have it, or if it doesn't have a right to have it, that revealing the information might be damaging . . . .

. . . .

So the Court has to somehow craft a protective order, and often the parties agree to a protective order, that protects the information from the public.

. . . .

And the Court finds here that the identities of the execution team do appear to be relevant to the [Appellees'] claim that the protocol is cruel and unusual, that there will be pain suffered by persons to be executed, and access to the identity and location of persons having knowledge of any discoverable matter won't strike the execution team, the persons who will put into effect the protocol that the State has now adopted, seems to me, to this Court, and I find that it is relevant to the [Appellees'] claim.

And then the question becomes how do you protect that sensitive information, the information that the legislature, for example, concludes is sensitive, and the Court concludes that the information is sensitive.

But the concern that the State puts forward about the sensitivity of the information is somewhat nebulous because so far, because so far - - well, the State has not provided evidence of threats or other reasons to be concerned for the physical safety of the execution team.

On March 20, 2014, we granted Appellants' Application for Appeal to consider whether the trial court erred in granting Appellees' motion to compel the disclosure of the identities of John Doe Defendants.

## II. STANDARD OF REVIEW

Decisions regarding pretrial discovery are reviewed for an abuse of discretion, *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005); *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992); *Loveall v. Am. Honda Motor Co.*, 694 S.W.2d 937, 939 (Tenn. 1985)), as are decisions regarding the application of a privilege. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (holding that application of attorney-client privilege and work product doctrine are subject to abuse of discretion standard).

The abuse of discretion standard limits the scope of our review of discretionary decisions, preventing us from second-guessing the trial court, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or substituting the trial court's judgment for that of our own, *State v. Sihapanya*, __ S.W.3d __, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *2 (Tenn. Apr. 30, 2014). However, "it does not prevent us from examining the trial court's decision to determine whether it has taken the applicable law and relevant facts into account." *Boyd*, 88 S.W.3d at 211 (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). A trial court abuses its discretion where it: (1) applies an incorrect legal standard; (2) reaches a decision that is illogical; (3) bases its decision on a clearly erroneous assessment of the evidence; or (4) employs reasoning that causes an injustice to the complaining party. *Id.* at 212 (citing *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *In re Paul's Bonding Co.*, 62 S.W.3d 187, 194 (Tenn. Crim. App. 2001); *Buckner v. Hassell*, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

In reviewing a trial court's discretionary decision, we review the trial court's underlying findings of fact de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd*, 88 S.W.3d at 212. The trial court's legal conclusions are reviewed de novo with no presumption of correctness. *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). Where a trial court makes an error of law, its discretionary decision must be reversed. *Boyd*, 88 S.W.3d at 212 (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)).

### III. ANALYSIS

The trial court determined that the identities of John Doe Defendants were not subject to an absolute privilege under Tennessee Code Annotated section 10-7-504(h) and that they were relevant under Tennessee Rule of Civil Procedure 26.02(1). It then conducted a balancing of the parties' interests and ruled in favor of disclosure, finding that John Doe Defendants' confidentiality interests were adequately secured by the protective order entered by the parties. On appeal, we address Appellants' argument that the identities of John Doe Defendants are only marginally relevant to Appellees' claims, that the information is privileged under the Tennessee Public Records Act, and that the interest in confidentiality outweighs any interest in disclosure.

### A. Relevance

Our law "favors making all relevant evidence available to the trier of fact." *Boyd*, 88 S.W.3d at 212. The scope and limits of pretrial discovery are governed in part by Tennessee Rule of Civil Procedure 26.02. The Rule states, in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including . . . the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Tenn. R. Civ. P. 26.02(1). The scope of discovery is to be broadly construed and liberally treated because knowledge of all relevant information gathered by the parties is essential to the course and outcome of litigation. *Johnson*, 146 S.W.3d at 605 (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Therefore, evidence is relevant for purposes of pretrial discovery if it is either admissible or if it seems reasonable that it may lead to other admissible evidence. *Id.* (citing *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 139 (W.D. Okl. 1977)).

As noted by the trial court, under Rule 26.02, "the identity and location of persons having knowledge of any discoverable matter" are expressly discoverable. Tenn. R. Civ. P. 26.02(1). Even considering Appellants' offer to provide information regarding the qualifications of John Doe Defendants and to subject them to screened depositions, Appellees' counsel would be unable to independently verify this information or subject it to meaningful scrutiny absent knowledge of John Doe Defendants' identities. Appellants argue

that John Doe Defendants' identities are only marginally relevant and, therefore, should be precluded from discovery. This is not the test for discoverability. So long as the John Doe Defendants' identities are admissible, or will reasonably lead to admissible evidence, they are relevant. Therefore, we find that the identities of John Doe Defendants are relevant to Appellees' claims.

Having found that the information sought by Appellees is relevant to their claims, we must determine whether the information is privileged and, therefore, not subject to discovery. *See* Tenn. R. Civ. P. 26.02. The Tennessee Rules of Civil Procedure were modeled on the Federal Rules of Civil Procedure, so we construe Tennessee Rule of Civil Procedure 26.02(1) consistently with its federal counterpart. *See, e.g.*, *Thomas v. Oldfield*, 279 S.W.3d 259, 262 (Tenn. 2009); *Williamson Cnty. v. Twin Lawn Dev. Co., Inc.*, 498 S.W.2d 317, 320 (Tenn. 1973). Like Tennessee Rule of Civil Procedure 26.02(1), Federal Rule of Civil Procedure 26(b)(1) does not define the term "privileged," so the meaning of the term is determined by reference to Federal Rule of Evidence 501. *See* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2016 (3d ed. 1998). Tennessee Rule of Evidence 501 provides that no privileges are recognized "[e]xcept as otherwise provided by the constitution, statute, common law, or by these or other rules promulgated by the Tennessee Supreme Court." Tenn. R. Evid. 501.

## B. Claim of Statutory Privilege

Appellants argue the information is privileged by virtue of Tennessee Code Annotated section 10-7-504(h), which treats the identities of all persons who have been or shall be involved in the process of executing a sentence of death as "confidential." Tenn. Code Ann. § 10-7-504(h) (Supp. 2014). Whether section 10-7-504(h) of the Public Records Act creates an evidentiary privilege is a question of law. Consequently, our review is de novo with no presumption of correctness. *Boyd*, 88 S.W.3d at 212.

"Every application of a text to particular circumstances entails interpretation." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 53 (2012) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). When called upon to answer a question of statutory interpretation, our goal is to "carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Harris v. Haynes*, __ S.W.3d __, No. E2012-02213-SC-R11-CV, 2014 WL 4197931, at *2 (Tenn. Aug. 26, 2014) (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)). We start by looking to the language of the statute, and if it is unambiguous, we apply the plain meaning and look no further. *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014); *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). In doing so, we must avoid any "forced or subtle construction that would limit or extend the meaning of the

language." *Keen v. State*, 398 S.W.3d 594, 610 (Tenn. 2012) (quoting *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). Only when the language of a statute is ambiguous do we turn to the broader statutory scheme, legislative history, or other sources for clarity in meaning. *Thurmond*, 433 S.W.3d at 517. A statute is ambiguous where it "can reasonably have more than one meaning." *Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 365 (Tenn. 2011) (quoting *Lee Med., Inc.*, 312 S.W.3d at 527).

The statutory language in which Appellants would have us find a privilege provides, in pertinent part, as follows:

(h)(1)Notwithstanding any other law to the contrary, those parts of the record identifying an individual or entity as a person or entity who or that has been or may in the future be directly involved in the process of executing a sentence of death shall be treated as confidential and shall not be open to public inspection. . . .

(2) Information made confidential by this subsection (h) shall be redacted wherever possible and nothing in this subsection (h) shall be used to limit or deny access to otherwise public information because a file, a document, or data file contains confidential information.

Tenn. Code. Ann. § 10-7-504(h). Specifically, Appellants argue that the twin directives that the identities of those involved in carrying out the death penalty "shall be treated as confidential and shall not be open to public inspection" mean that such information is both protected from public disclosure and disclosure in litigation. Such an interpretation, however, is inconsistent with precedent.

In *State v. Fears*, 659 S.W.2d 370 (Tenn. Crim. App. 1983), *overruled on other grounds by State v. Harrison*, 270 S.W.3d 21 (Tenn. 2008), the court interpreted the predecessor to Tennessee Code Annotated section 10-7-504(a)(1), an exception to the Public Records Act that treats all medical records in the possession of state hospitals and medical facilities as confidential. 659 S.W.2d at 376. The defendant in *Fears* asserted that certain of his medical records should be suppressed on the basis of this exception. *Id*. at 375. Similar to the language at issue here, the statute provided that patient records from state hospitals "shall be treated as confidential and shall not be open for inspection by members of the public." *Id*. at 376. The court found that, although the Public Records Act protects medical records from the general public, it does not apply to courts and public officials performing their official duties. *Id*. "Courts, grand juries, and district attorneys are not embraced in the term 'public' as used in these statutes." *Id*.

We dealt with nearly identical language outside of the Public Records Act in *Huntsville Utility District of Scott County, Tennessee v. General Trust Co.*, 839 S.W.2d 397 (Tenn. Ct. App. 1992). In that case, the plaintiff contended that the identities of public bondholders could not be discovered because Tennessee Code Annotated section 9-19-109 (2010) designates such information as "confidential and not subject to public inspection." 839 S.W.2d at 405. Construing the statute in the context of the Public Records Act and other Tennessee laws, we found "[t]he purpose of the provision protecting bondholders from public inspection was to except this information from the Public Records laws and not to create some broader privilege from disclosure." *Id*. at 405-06. We also noted the difficulties that would arise if we were to apply that statute to create a broader privilege preventing discovery in civil litigation. "Bondholders contemplating civil lawsuits for fraud could not obtain the names of other persons similarly situated even with a protect[ive] order limiting disclosure to the public." *Id*. at 406.

Notwithstanding the precedent, Appellants present two arguments for finding Tennessee Code Annotated section 10-7-504(h) applicable beyond public records requests. First, Appellants assert that section 10-7-504(h) has been invoked by the court in a context other than a public record request, citing *Workman v. Campbell*, No. M2001-01445-COA-R3-CV, 2002 WL 869963 (Tenn. Ct. App. May 7, 2002). In *Workman*, we found statutory support in Tennessee Code Annotated section 10-7-504(h) for a prison warden's decision to restrict visits by the minister of a condemned prisoner. *Id*. at *6. However, the warden's power to restrict access was not based upon section 10-7-504(h), rather Tennessee Department of Corrections policies regarding death row inmates granted the warden the discretion to set such limits. *Id*. at *5.

Secondly, Appellants make a statutory construction argument. Finding significance in the fact that Tennessee Code Annotated section 10-7-504(h) "does not expressly provide for the release of execution-related information to a condemned inmate,"[1] they argue that "the statute must be construed as making the information sought by Plaintiffs absolutely confidential and not subject to disclosure by discovery, court order, or otherwise." As noted in Appellants' brief, other subparts of section 10-7-504 explicitly provide for circumstances in which otherwise confidential information may be released. Under Tennessee Code Annotated section 10-7-504(q), information concerning a victim of sexual abuse may be disclosed by a district attorney general or attorney general and counsel for a defendant "in a pending criminal case or appeal, where the constitutional rights of the defendant require it." Tenn. Code Ann. § 10-7-504(q)(1), (3). Under Tennessee Code Annotated section 10-7-

---

[1] As noted above, the order at issue here authorizes disclosure to counsel of record, staff, and experts, not the condemned inmates, but presumably Appellants' argument would apply with equal force as section 10-7-504(h) also does not expressly provide for release to counsel of record, staff, and experts.

504(a)(15), similar language allows for release of identifying information in an order of protection maintained by a utility service provider. Tenn. Code Ann. § 10-7-504(a)(15)(A), (B), & (H). Under Tennessee Code Annotated section 10-7-504(a)(8), investigative records of the internal affairs division of the department of corrections or of the department of children services may be released "in accordance with the Tennessee Rules of Civil Procedure" and the court "shall issue appropriate protective orders." Tenn. Code Ann. at § 10-7-504(a)(8).

To accept Appellants argument, however, we would be compelled to ignore certain canons of statutory construction.[2] For instance, the surplusage canon assumes that every word in a statute has a meaning and should not be ignored. Accordingly, we give each word full effect so long as "the obvious intention of the General Assembly is not violated by so doing." *State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012) (quoting *Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn. 2007)). Appellants' construction of the statute would have us read "confidential" to mean "privileged" for purposes of section 10-7-504(h). However, those terms are used together elsewhere in the statute. Under Tennessee Code Annotated section 10-7-504(a)(13)(A), information gathered by mental health professionals in the course of treating certain public servants is "confidential and privileged and . . . not subject to disclosure in any judicial or administrative proceeding." Tenn. Code Ann. § 10-7-504(a)(13)(A). Appellants' construction would render the phrase "privileged and . . . not subject to disclosure in any judicial or administrative proceeding" mere surplusage.

The canon of *casus omissus pro omisso habendus est* directs that a case omitted is intentionally omitted. *See Hickman v. Wright*, 210 S.W. 447, 448 (Tenn. 1919) ("A pure '*casus omissus*' occurring in a statute can never be supplied or relieved against by the court under any rule or canon of construction or interpretation."); *MacMillan v. Director, Div. of Taxation*, 434 A.2d 620, 621 (N.J. Super. Ct. App. Div. 1981) ("We certainly may not supply a provision no matter how confident we are of what the Legislature would do if it were to reconsider today."). This canon arises from the general rule that we are restricted to the plain and ordinary meaning of the language used by the Legislature, unless an ambiguity requires us to refer to other sources for clarity. *See Austin v. Memphis Pub*. Co., 655 S.W.2d 146, 148 (Tenn. 1983).

Where a statute covers one matter, but omits another, we may not usurp the role of the Legislature by adding the matter omitted. *See Hickman*, 210 S.W. at 448. In this case,

---

[2] "Canons of construction, though helpful, should always be tested against the other interpretive tools at a court's disposal." *In re Estate of Tanner,* 295 S.W.3d 610, 624 (Tenn. 2009).

Tennessee Code Annotated section 10-7-504(h) states that the identities of those involved in carrying out the death penalty are "confidential" and "not subject to public disclosure." Subsection (h) does not use the terms "privileged," "judicial proceeding," "Tennessee Rules of Civil Procedure" or "discovery," terms that may be found in other subsections of section 10-7-504. We conclude by these omissions that subsection (h) does not cover these matters.

Although Appellants invoke principals of statutory construction, they have not argued, perhaps wisely, that Tennessee Code Annotated section 10-7-504(h) is ambiguous. In the event of ambiguity, we turn to other interpretive tools including the broader context of the statutory scheme with reference to its general purpose. *Wachovia Bank of N.C., N.A. v. Johnson*, 26 S.W.3d 621, 624 (Tenn. Ct. App. 2000). The Public Records Act has been described as an "all encompassing attempt to cover all printed material created or received by the government in its official capacity." *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991) (quoting *Bd. of Educ. of Memphis City Sch. v. Memphis Publ'g Co.*, 585 S.W.2d 629, 630 (Tenn. Ct. App. 1979)). The Act provides that "[a]ll state, county, and municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a)(2)(A). The Act further provides that it "shall be broadly construed so as to give the fullest possible access to public records." Tenn. Code Ann. § 10-7-505(d). Our Supreme Court has interpreted these provisions to create a legislatively-mandated presumption favoring openness and disclosure of government records. *Schneider v. City of Jackson*, 226 S.W.3d 332, 340 (Tenn. 2007) (citing *State v. Cawood*, 134 S.W.3d 159, 165 (Tenn. 2004); *Tennessean v. Elec. Power Bd.*, 979 S.W.2d 297, 305 (Tenn. 1998); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 785 (Tenn. Ct. App. 1999)). Absent a statutory exception, this mandate requires disclosure "even in the face of serious countervailing considerations." *Id*. (quoting *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn. 1994)).

Here, of course, we are faced with an exception to the broader provisions of the Public Records Act favoring disclosure. When interpreting an exception to a broader statutory scheme, the exception must be strictly construed so as not to defeat the purpose of the statute. *City of Kingsport v. Quillen*, 512 S.W.2d 569, 573 (Tenn. 1974).

We conclude that Tennessee Code Annotated section 10-7-504(h) does not create a privilege that protects the identities of John Doe Defendants from pretrial discovery. This conclusion is consistent with the language of the statute and previous decisions interpreting similar provisions. *See Huntsville*, 839 S.W.2d at 405-06 (holding provision of Tennessee statute deeming identities of public bondholders "confidential" was not intended to prevent disclosure for purposes of litigation); *Fears*, 659 S.W.2d at 376 (finding provision of Tennessee Public Records Act which makes medical records "confidential" does not apply

to prevent discovery in litigation). Our holding is also in line with the interpretation of similar federal statutes and statutes of other states.[3] *See, e.g., Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir. 1975) (finding that exceptions to the federal Freedom of Information Act were not meant to create evidentiary privileges for purposes of civil discovery); *Rowan B., Sr. v. State, Dept. of Health & Soc. Serv.*, 320 P.3d 1152, 1156 (Alaska 2014) (noting that the Alaska Public Records Act has very different mechanisms and reasons for protecting information than the rules of civil discovery); *Tighe v. City & Cnty. of Honolulu*, 520 P.2d 1345, 1348 (Haw. 1974) (holding disclosure of records to a party during the course of litigation does not constitute the type of "public inspection" precluded by the public records act).

Furthermore, given the underlying policy of the Public Records Act favoring disclosure, as well as the precedent set by *Fears* and *Huntsville*, it seems likely that, had section 10-7-504(h) been intended to apply to discovery as well as public records requests, the Legislature would have said so expressly. In other contexts, the Legislature has specifically excluded information from discovery as well as disclosure. *See* Tenn. Code Ann. § 29-26-122(d)(1) (2012) ("Subject only to subdivision (d)(2), the written statement of an expert relied upon in executing the certificate of good faith *is not discoverable in the course of litigation*." (emphasis added)); Tenn. Code Ann. § 36-3-624(e) (2014) ("An oral or written communication or a document shared within or produced by a domestic abuse death review team related to a domestic abuse death is *confidential and not subject to disclosure or discoverable* by a third party. (emphasis added)); Tenn. Code Ann. § 45-1-126(b)(1) (2007) ("Compliance review documents are *confidential and are not discoverable or admissible in evidence* in any civil action arising out of matters evaluated by the compliance review committee." (emphasis added)); Tenn. Code Ann. § 56-47-112(a)(5) (2008) ("The anti-fraud plans and the summary of the insurer's anti-fraud activities and results are not public records and . . . shall be proprietary and *not subject to public examination, and shall not be discoverable or admissible in civil litigation*." (emphasis added)).

---

[3] In drawing comparisons to other state and federal records acts we recognize that they are not perfect analogs to our own. In *Schneider v. City of Jackson*, 226 S.W.3d 332 (Tenn. 2007), our Supreme Court noted that the federal Freedom of Information Act ("FOIA"), and other state statutes patterned after it, contain "nine broad and general exceptions to disclosure that necessarily require substantial judicial interpretation." 226 S.W.3d at 342-43. In contrast, our own Public Records Act contains more limited and specific exceptions to the general rule providing for disclosure of public records. Judicial interpretations of these other acts remain supportive of our findings in this instance, however, because they illustrate that, even in a statutory regime allowing for a broader scope of exceptions to disclosure, those exceptions are not meant to prevent discovery.

## C. Balancing of Parties' Interests

As stated above, the trial court conducted a balancing of the parties' interests and ruled in favor of disclosure. On appeal, Appellants also argue that the interest in confidentiality outweighs any interest in disclosure based on this balancing of interests.

With regard to discovery, a court engages in a balancing of the parties' interests only after a threshold determination that a privilege applies. *See Schneider v. City of Jackson*, No. W2005-01234-COA-R3-CV, 2006 WL 1644369, at *15 (Tenn. Ct. App. June 14, 2006) (citing *City of New York v. Beretta U.S.A. Corp.*, 222 F.R.D. 51, 66 (E.D.N.Y. 2004) ("However, the party asserting the privilege must 'make a threshold showing that the privilege attaches' before the court is required to balance the parties' interests.")), *reversed on other grounds by Schneider*, 226 S.W.3d at 332; *see also E.E.O.C. v. Texas Hydraulic, Inc.*, 246 F.R.D. 548, 552 (E.D. Tenn. 2007) (finding that the district court must engage in a balancing of the parties' interests only after a party successfully shows it is entitled to a privilege).

Because we have concluded Tennessee Code Annotated section 10-7-504(h) does not create a privilege, it is not necessary for us to engage in a balancing of the interests of confidentiality and disclosure.[4] The identities of John Doe Defendants are relevant to Appellees' claims, and they are appropriately protected from public disclosure by the Agreed Protective Order.[5]

## IV. CONCLUSION

For the reasons set forth above, we affirm the trial court's order compelling discovery. Costs of this appeal are taxed to the State of Tennessee.

---

[4] To the extent that Appellants seek to invoke common-law privilege to protect the identities of John Doe Defendants from discovery, we find no common-law privilege applicable. Appellants urge us to look to federal common-law privilege in finding the identities protected from discovery. However, in *Schneider v. City of Jackson*, 226 S.W.3d 332 (Tenn. 2007), our Supreme Court cautioned against drawing on federal privilege to protect information under the Tennessee Public Records Act. 226 S.W.3d at 342. The Court further noted its unwillingness to adopt a broad "public policy" privilege under Tennessee law. *Id*. at 344. Appellants' reliance on the informer's privilege in *State v. Ostein*, 293 S.W.3d 519 (Tenn. 2009), is also unavailing due to its inapplicability. *See* 293 S.W.3d at 527 (describing the informer's privilege as "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law").

[5] We are confident in the trial court's ability, exercising its authority under Tennessee Rule of Civil Procedure 26.03, to put into place further protections as may be necessary to prevent public disclosure of the identities.

_____
W. NEAL McBRAYER, JUDGE