NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| MICHAEL ANTHONY ROBERTS, | Court of Appeals No. A-11626 |
| Appellant, | Trial Court No. 3PA-12-3045 CR |
| v. | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2546 — April 7, 2017 |

Appeal from the District Court, Third Judicial District, Palmer, John W. Wolfe, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. James J. Fayette, Assistant Attorney General, Office of Special Prosecutions & Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Michael Anthony Roberts pleaded no contest to eight counts of flying an aircraft without a license.[1] In addition, following a jury trial, Roberts was convicted of one count of unlawful possession or transportation of game.[2] (The jury acquitted Roberts of six other charges.)

In this appeal, Roberts challenges his conviction for unlawful possession or transportation of game on three separate grounds. First, he argues that the trial court committed plain error when it failed to instruct the jurors that, to return a verdict, they had to reach a unanimous decision. Second, he argues that the trial judge improperly restricted his attorney's closing argument when the judge precluded the defense attorney from contrasting the burden of proof used in criminal trials, "beyond a reasonable doubt", with the lesser burdens of proof used in other types of proceedings. Finally, Roberts argues that the trial judge should have granted his attorney's pretrial request for disclosure of various documents relating to a search warrant application that was denied during the investigation of Roberts's case.

We agree with Roberts that the trial judge should have explicitly instructed the jurors that their decision had to be unanimous. However, we conclude that this error was rendered harmless when the judge individually polled the jurors to confirm that they concurred in the verdicts.

We also agree with Roberts that the trial judge committed error when the judge prohibited the defense attorney from contrasting proof "beyond a reasonable doubt" with proof "by a preponderance of the evidence". However, we conclude that this error was rendered harmless because the defense attorney was able to address this same concept using other phrasings.

---

[1]    AS 02.35.120.

[2]    5 AAC 92.140(a).

Finally, we uphold the trial court's refusal to order disclosure of the trooper incident reports pertaining to the search warrant application that was denied.

For these reasons, we affirm Roberts's conviction for unlawful possession or transportation of game.

Roberts also appeals his composite sentence as excessive. We affirm the sentence because, given the facts of Roberts's case, it is not clearly mistaken.

*Underlying facts*

In 2011, a hunter contacted Michael Roberts for assistance in hunting a bear. For a fee of $5000, Roberts agreed to fly the man to a specified hunting location and to otherwise assist him in the hunt.

After several failed hunting attempts, two of Roberts's other clients joined the hunting party for the next attempt. The four flew to Cape Yakataga and then hunted the next day. They were successful in taking two black bears. But while two of the hunters were field-dressing the two black bears, either Roberts or the other hunter illegally shot a third black bear.

After this Cape Yakataga hunt came to the attention of the authorities, the State filed sixteen misdemeanor charges against Roberts (some relating to the Cape Yakataga hunt, and some relating to other hunts). One of these charges was for unlawful possession or transportation of the third bear killed at Cape Yakataga.

Before trial, Roberts pleaded no contest to eight counts of flying an aircraft without a license. The jury acquitted Roberts of all of the remaining counts except the count charging him with unlawful possession or transportation of the bear.

*The trial judge committed obvious error in failing to instruct the jurors that their decision had to be unanimous, but this error was cured when the judge polled the individual jurors*

As in all criminal trials in Alaska, Roberts's jury was required to reach unanimity before they could return a verdict. [3] However, the trial judge neglected to inform the jurors of this requirement.

Roberts's attorney did not object at the time to the trial judge's failure to instruct the jurors on the requirement of a unanimous verdict, but on appeal Roberts argues that the judge's failure to give such an instruction constituted plain error.

We agree with Roberts that the judge's failure to instruct the jurors concerning the requirement of unanimity was obvious error. However, we conclude that this error was cured when, upon the announcement of the jury's several verdicts (most of which favored Roberts), the trial judge polled the jurors individually.

The judge asked each juror to tell him "whether these are your verdicts". In response, each juror responded in the affirmative.

Although this question has not previously been addressed by the Alaska appellate courts, the majority of jurisdictions that have dealt with this question have concluded that a judge's failure to instruct the jury on the requirement of a unanimous decision is cured when the individual jurors are polled and they each affirm that they concur in the announced verdicts. [4]

Roberts argues that the polling in his case was inadequate because, when the judge asked the individual jurors whether the announced verdicts were "your

---

[3]  Alaska Criminal Rule 31(a).

[4]  *See State v. Plantin*, 682 N.W.2d 653, 662 (Minn. App. 2004) (collecting cases); *State v. Kircher*, 525 N.W.2d 788, 791-92 (Wis. App. 1994) (collecting cases); *Fountain v. State*, 275 A.2d 251, 252 (Del. 1971).

verdict", some of the jurors potentially could have interpreted the judge's question as simply asking them to confirm that the verdicts announced in court were, indeed, the verdicts *reached by the jury as a group*, without regard to whether the individual juror agreed with the announced decisions. We have listened to the audio recording of the juror polling, and we conclude that it does not support Roberts's suggestion. The audio record shows that the trial judge directed an individualized inquiry to each juror. We conclude that, had there been one or more dissenting jurors, they would have spoken up during this polling process. We are confident that the verdicts returned by the jury in Roberts's case (one conviction and several acquittals) reflect the jurors' unanimous decisions.

For these reasons, we conclude that the polling of the jurors at the end of the trial cured the trial judge's error in failing to instruct the jury on the requirement of a unanimous decision.

*The trial judge committed error when the judge restricted the content of the defense attorney's summation to the jury — but, given the arguments that the defense attorney was able to make despite the trial judge's restriction, the judge's error was harmless*

During his closing argument to the jury, Roberts's defense attorney began to discuss the "four burdens of proof that we have ... in our judicial system." The defense attorney apparently intended to discuss the concepts of "probable cause", proof by a "preponderance of the evidence", proof by "clear and convincing evidence", and proof "beyond a reasonable doubt".

However, before the defense attorney could begin discussing these topics, the prosecutor objected. The prosecutor took the position that any discussion of the three lesser burdens of proof would confuse the jury. The trial judge sustained the

prosecutor's objection and ruled that the defense attorney was not permitted to discuss these lesser burdens of proof:

> *The Court*: I think you can argue that [proof beyond a reasonable doubt] is the highest burden in the land, and [you can talk about] what a high burden it is. But as far as comparing it to other legal standards that are not being instructed on, I don't think that's appropriate.

On appeal, Roberts challenges this restriction on his attorney's argument to the jury.

Both the Alaska Supreme Court and this Court have acknowledged that a trial judge has a considerable degree of authority to control the scope and content of the arguments that attorneys make to the jury. [5] For example, the trial judge can preclude the attorneys from arguing legal theories that are unsupported by the evidence or that are inconsistent with the law declared in the court's jury instructions. [6] But we conclude that the trial judge overstepped the bounds of that authority in Roberts's case.

The concept of proof "beyond a reasonable doubt" may be familiar to lawyers and judges, but even lawyers and judges would concede that this phrase is not self-explanatory. Because the phrase "beyond a reasonable doubt" does not have a universally understood meaning, the Alaska committee on criminal pattern jury instructions developed Criminal Pattern Jury Instruction 1.06 to explain this concept to jurors. But this pattern jury instruction has its flaws.

---

[5]    *See Shane v. Rhines*, 672 P.2d 895, 901 (Alaska 1983); *Castillo v. State*, unpublished, 1994 WL 16196506, *1 (Alaska App. 1994).

[6]    *See Clarke v. State*, unpublished, 2009 WL 3681650, *5 (Alaska App. 2009) (holding that a trial judge may properly forbid a defense attorney from arguing self-defense when there is insufficient evidence to justify a jury instruction on self-defense).

The relevant portion of Criminal Pattern Jury Instruction 1.06 defines the concept of "beyond a reasonable doubt" in two ways: by listing various things that this concept does *not* mean, and also by trying to explain what the concept *does* mean. [7]

The pattern instruction declares that proof "beyond a reasonable doubt" does not mean proof by "mere suspicion or speculation" — nor, on the other hand, does it mean proof "beyond all possible doubt". Rather, according to the instruction, the test is whether there is a "reasonable doubt" — a concept which the instruction defines as "a doubt based upon reason and common sense".

The pattern instruction then declares that proof "beyond a reasonable doubt" is "proof of such a convincing character that, after consideration, you would be willing to rely and act upon it without hesitation in your important affairs."

This formulation of the test — the idea that jurors must find the evidence so convincing that they would act upon it "without hesitation" in the most important of their own personal affairs — has drawn substantial criticism.

For example, in the commentary to the federal pattern jury instructions, the Federal Judicial Center drafters question whether there is any meaningful analogy

---

[7]    The pertinent portion of Alaska Criminal Pattern Jury Instruction No. 1.06 reads:

[The] requirement ... that the prosecution must prove the defendant's guilt beyond a reasonable doubt ... is what is called the burden of proof. It is not required that the prosecution prove guilt beyond all possible doubt, for it is rarely possible to prove anything to an absolute certainty. Rather, the test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense. Proof beyond a reasonable doubt must be proof of such a convincing character that, after consideration, you would be willing to rely and act upon it without hesitation in your important affairs. A defendant may never be convicted on mere suspicion or speculation.

between, on the one hand, the decisions that juries must make in criminal cases and, on the other hand, the decisions that people must make in their own important affairs.

First, the drafters note that when people make decisions about their own important affairs, those decisions normally do not require people to resolve conflicting accounts of *past events* — which, of course, is the principal task facing a jury. Rather, making decisions about one's own important affairs normally requires people to make predictions about the outcomes and consequences of their *potential future actions* (or inaction).

Second, the federal drafters note that it is a fantasy to assume that people make important life decisions "without hesitation":

> [The] decisions we make in the most important affairs of our lives — choosing a spouse, a job, a place to live, and the like — generally involve a very heavy element of uncertainty and risk-taking. [These decisions] are wholly unlike the decisions [that] jurors ought to make in criminal cases.

Federal Judicial Center, *Pattern Criminal Jury Instructions* (1987), pp. 18-19 (Commentary on Instruction 21).

In her concurring opinion in *Victor v. Nebraska*,[8] Justice Ruth Bader Ginsburg endorsed the following instruction on "reasonable doubt" drafted by the Federal Justice Center:

> The government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must

---

[8]   511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).

be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

*Victor v. Nebraska*, 511 U.S. at 27, 114 S.Ct. at 1253 (concurring opinion of Justice Ginsburg).

We, like Justice Ginsburg, believe that this type of instruction is a great improvement over instructions that speak of "acting without hesitation in the most important of one's personal affairs". The above-quoted instruction avoids the serious problems inherent in that formulation. At the same time, it explains the concept of proof "beyond a reasonable doubt" in straightforward terms, and it explicitly and meaningfully distinguishes proof "beyond a reasonable doubt" from proof "by a preponderance of the evidence".

We note that, in the federal instruction, juries are told that they must decide whether there is "a real possibility" that the defendant is not guilty. This mirrors the language of *Chapman v. California*,[9] where the Supreme Court declared that when a court evaluates whether a constitutional error was harmless "beyond a reasonable doubt",

---

[9] 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

this is equivalent to asking "whether there is a reasonable possibility" that the error affected the outcome. [10]

We say all of this, not to formally disapprove Alaska's Criminal Pattern Jury Instruction 1.06, but rather to explain why we conclude that the trial judge in the present case committed error when he prevented Roberts's defense attorney from explaining to the jurors that they could not find Roberts guilty merely because it was "probable" or "more likely than not" that Roberts had committed the crimes charged against him.

Pattern Jury Instruction No. 1.06 does not expressly explain that proof "beyond a reasonable doubt" requires more than a probability of guilt. Thus, it would have been helpful if the defense attorney had been allowed to clarify that the jury could not convict Roberts merely because he was "probably" or "likely" guilty — that Roberts could be convicted only if the jurors were convinced that there was no reasonable possibility that Roberts was not guilty.

(Indeed, it would have been proper for the prosecutor or the trial judge to clarify this same principle.)

Nevertheless, we find the trial judge's error to be harmless under the facts of Roberts's case. In his summation, Roberts's defense attorney engaged in an extensive discussion of the concept of proof "beyond a reasonable doubt", and he told the jurors that they could not find Roberts guilty merely because the State's evidence showed that there was good reason to think that Roberts was guilty.

Given that the defense attorney was, as a practical matter, allowed to contrast proof beyond a reasonable doubt with proof by a preponderance of the evidence,

---

[10] *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.

we conclude that the judge's erroneous restriction on the defense attorney's argument did not affect the jury's verdict, so the error was harmless. [11]

*Why we conclude that the trial judge did not abuse his discretion when he rejected Roberts's request for disclosure of the documents supporting the State's unsuccessful application for a warrant to search his attorney's office*

After the State filed its charges against Roberts, the State discovered that Roberts had somehow obtained a copy of the charges before the judge had issued the criminal process against Roberts. After being alerted to this irregularity, the prosecutor asked the district court to issue a warrant authorizing a search of the computer belonging to Roberts's defense attorney, Chadwick McGrady. The State asserted that there was probable cause to believe that McGrady's computer contained information revealing how Roberts had obtained an advance copy of the charging document. While the State was applying for this warrant, members of the Alaska State Troopers physically took possession of McGrady's law office for two hours.

The State's search warrant application was ultimately denied — and subsequent investigation revealed that Roberts had secured the charging document directly from the court clerk.

Before trial, Roberts's attorney sought disclosure of the search warrant application. The State opposed this request for disclosure, but it filed the documents supporting the search warrant application under seal with the district court. After reviewing the sealed documents *in camera*, the district court denied the defense attorney's request for disclosure.

---

[11] *See Ingram v. State*, 50 A.3d 1127 (Md. 2012) (holding that a trial judge's curtailment of a defense attorney's reference to the various degrees of proof was harmless error).

On appeal, Roberts asks us to independently examine these sealed materials and re-assess the district court's decision. We have done so. The sealed documents consist of e-mails between the prosecutor (James Fayette) and the defense attorney (Chadwick McGrady), as well as two "incident reports" prepared in connection with the troopers' investigation of the premature disclosure of the charging documents and the physical seizure of McGrady's law office. These documents contain nothing that is not already of record. We therefore uphold the district court's denial of Roberts's request for disclosure of these materials.

*Roberts's challenge to his sentence*

Roberts was convicted of eight counts of flying an aircraft without a license and one count of unlawfully possessing or transporting game. For each of his flying without a license convictions, Roberts faced a jail term of 6 months. [12] For the unlawful possession or transportation of game conviction, Roberts faced up to a year in jail, a fine of $10,000, and forfeiture of his airplane. [13]

For these nine offenses, the district court sentenced Roberts to a composite term of 340 days to serve. (Roberts received 20 days to serve for each of the eight counts of flying without a license, and he received 180 days to serve (360 days with 180 days suspended) for the unlawful possession or transportation of game.)

---

[12] AS 02.35.120.

[13] *See* 5 AAC 92.140(a) (defining unlawful possession or transportation); AS 16.05.925 (declaring this offense to be a class A misdemeanor); AS 12.55.135(a) (setting forth the penalty for class A misdemeanors); and AS 16.05.195 (authorizing forfeiture of airplanes used in hunting offenses).

With regard to the game conviction, the court also imposed a $5000 fine and ordered forfeiture of the airplane that Roberts used for the Cape Yakataga hunt. Roberts now challenges this sentence as excessive.

At the time of sentencing, Roberts was 51 years old. He had a long criminal history — more than 25 criminal convictions, including at least five prior convictions for hunting and game offenses.

In its sentencing remarks, the court noted Roberts's extensive criminal history, and the court observed that Roberts had received substantial sentences for prior offenses — sentences that failed to deter him. Based on Roberts's extensive criminal history, the court concluded that Roberts's actions were "in complete disregard of the law".

Given the facts of the present case and Roberts's criminal history, we conclude that the sentence imposed by the district court was not clearly mistaken. [14]

*Conclusion*

The judgement of the district court is AFFIRMED.

---

[14] *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).