*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CYNTHIA W., | ) | |
| | ) | Supreme Court No. S-17953 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-19-00029 CN |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | No. 7563 – October 29, 2021 |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Thomas I. Temple, Judge.

Appearances: Justin Gillette, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Jessica M. Alloway, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Nikole V. Schick, Assistant Public Advocate, Fairbanks, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, and Borghesan, Justices. [Carney, Justice, not participating.]

BORGHESAN, Justice.

# I.    INTRODUCTION

According to Alaska's child-in-need-of-aid laws, a child is presumed to be at substantial risk of sexual abuse (and therefore in need of aid) if the parent knowingly leaves the child with a person convicted of or under investigation for a sex offense against a minor.[1]  After an adjudication hearing,[2] the superior court found a child to be at substantial risk of sexual abuse based on evidence that she was left with her mother's boyfriend, who had been indicted for sexual abuse of a minor.  The mother appeals, arguing that the superior court erred by not acknowledging that an indictment is weaker proof than a conviction and by not making findings about the likelihood that the conduct underlying the indictment actually occurred.  Because the statute does not require the superior court to draw such distinctions or make such findings, and because the findings the court did make are not clearly erroneous, we affirm its ruling that the child was in need of aid.

# II.    FACTS AND PROCEEDINGS

Cynthia W. is the mother of Kara W., a teenager.[3]  The Alaska Department of Health and Social Services, Office of Children's Services (OCS) originally became involved in Kara's and Cynthia's lives following reports of domestic violence and alcohol abuse in their home.  OCS became aware that Cynthia's boyfriend Joel faced allegations of sexual abuse of his former stepchildren.

When Kara was 15 years old, OCS filed a petition to declare her a child in need of aid based upon the sexual abuse allegations against Joel, Cynthia's drinking, and alleged domestic violence.  Shortly after appointing a guardian ad litem for Kara, the

---

[1]    AS 47.10.011(7).

[2]    AS 47.10.080(a); CINA R. 15.

[3]    We use pseudonyms for all individuals in this case.

superior court found probable cause to believe that Kara was a child in need of aid and granted OCS temporary custody of her. Kara was subsequently removed from Cynthia's home and entered foster care.

The following year OCS decided that Kara should return to live with Cynthia, subject to a safety plan requiring that Kara be kept away from "unsafe individuals." After OCS returned Kara to Cynthia's home but before OCS formally released legal custody, OCS received a report of a physical altercation between Cynthia and Kara. Upon investigation, an OCS caseworker discovered that Cynthia had moved out of her old residence on file with OCS and signed a lease with Joel — who at that point had been indicted by a grand jury on one count of sexual abuse of a minor in the first degree and two counts of sexual abuse of a minor in the second degree. OCS had previously communicated to Cynthia on numerous occasions that it did not support Kara being around Joel. Upon learning that Kara was residing with Joel, OCS twice attempted and failed to remove her from the home.

OCS moved for a writ of assistance allowing law enforcement to assist in removing Kara from the home. At the hearing on this motion, Cynthia testified that she was still living with Joel and that she knew OCS did not approve of his living with Kara, but also stated that she did not believe the sexual abuse allegations against Joel or that he was a threat to Kara. She further testified that she was not trying to hide Kara from OCS and claimed that she had cooperated and would continue to cooperate with OCS. After hearing testimony from both sides, the court granted the writ of assistance, finding probable cause of substantial risk of domestic violence and sexual abuse to Kara.

OCS sought to remove Kara pursuant to the writ after the hearing but was unsuccessful in locating her. The day before a new adjudication and disposition trial was set to begin, the caseworker and several state troopers went to Cynthia's shared residence with Joel to find Kara. After a long delay, Cynthia answered the door and denied that

Kara was inside. But after Cynthia granted troopers entry to the residence, they found Kara hiding and crying in the basement. Although Kara did not initially resist being taken away by the troopers, she later began to kick, scream, and bang on the windows of the troopers' vehicle. Kara reportedly bit a law enforcement officer and slammed her head against the window of the vehicle. Concerned that Kara was a danger to herself and others, the troopers had her admitted to the hospital.

The following day the adjudication hearing began. Following testimony from the caseworker regarding her personal knowledge of the case and the events of the previous evening, Kara testified telephonically from the hospital, stating that she wished to remain with family and that she did not believe Joel was a threat to her. Kara was questioned about a video she posted to social media in which she accused her mother of making her live with a "pedophile." Kara described the video as an act of lashing out and indicated that she felt bad about the incident. Cynthia did not testify at this hearing. The superior court found by a preponderance of the evidence that Kara was a child in need of aid under AS 47.10.011(7) based on substantial risk of sexual abuse; it was in Kara's best interests to remain in the custody of OCS; it was contrary to Kara's welfare to return to her mother's home; and OCS made reasonable efforts to offer family support services to prevent Kara's removal from the home.

Cynthia appeals the adjudication order, arguing that the trial court erred by finding that Kara was at substantial risk of sexual abuse.

# III. ANALYSIS

## A. The Superior Court Correctly Applied The Evidentiary Presumption Of Substantial Risk Of Sexual Abuse Under AS 47.10.011(7).

A child may be found in need of aid and placed in OCS custody if the child is at substantial risk of sexual abuse due to the parent's conduct.[4] According to AS 47.10.011(7), leaving the child with a person convicted of or under investigation for sexual abuse of a minor is prima facie evidence of substantial risk:

> [I]f a parent . . . has actual notice that a person has been convicted of a sex offense against a minor within the past 15 years, is registered or required to register as a sex offender under AS 12.63, or is *under investigation for a sex offense against a minor*, and the parent . . . subsequently allows a child to be left with that person, this conduct constitutes *prima facie evidence* that the child is at substantial risk of being sexually abused.[5]

In other words, if OCS presents evidence of those facts, the statute establishes a presumption that the child is at substantial risk,[6] which the parent then may rebut.[7]

Citing this statute, the superior court began by finding, based on testimony from Kara, Cynthia, and an OCS caseworker, that Joel was "under investigation for a sex offense against a minor." The court then found that Cynthia was "still living with [Joel] — and thereby putting [Kara] at risk." Finally, the court considered but found

---

[4]    AS 47.10.011(7); AS 47.10.080(c), (f).

[5]    AS 47.10.011(7) (emphasis added).

[6]    Alaska R. Evid. 301(b) ("A statute providing that a fact or group of facts is prima facie evidence of another fact establishes a presumption within the meaning of this rule.").

[7]    *See* Alaska R. Evid. 301(a) (describing operation of evidentiary presumption).

unpersuasive the evidence offered by Cynthia to show that Kara was not at substantial risk of sexual abuse by Joel; instead the court found by a preponderance of the evidence that Kara was at substantial risk of sexual abuse and was therefore a child in need of aid.

Cynthia argues that the superior court incorrectly applied the statutory presumption. She acknowledged at the hearing that she had actual notice of the charges against Joel. And she does not dispute that Joel's grand jury indictment on charges of sexual abuse of a minor meant that he was "under investigation for a sex offense against a minor."[8] Cynthia instead argues that the court erred by failing to consider that an indictment is relatively weak evidence that Joel posed a risk to Kara, compared to the other types of evidence that can establish the presumption: a conviction or having to register as a sex offender. OCS defends the superior court's ruling and adds its own gloss to the statute: once the presumption is established, OCS argues, it is *the parent's* burden to prove that the child was not at substantial risk. Because these arguments pertain to how the statutory presumption should be applied, we review the superior court's decision de novo.[9]

Cynthia's argument that the superior court was required to weigh the probative value of the indictment when applying the presumption is not supported by the statutory text. A criminal conviction, which requires a unanimous jury verdict and proof beyond a reasonable doubt,[10] is certainly more conclusive evidence of past sexual abuse

---

[8] AS 47.10.011(7).

[9] *Rowan B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 320 P.3d 1152, 1156 (Alaska 2014) ("We review issues of statutory and constitutional construction de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.").

[10] *See Khan v. State*, 278 P.3d 893, 899 (Alaska 2012) (detailing jury
(continued...)

than merely being under investigation of sexual abuse of a minor. But the text of AS 47.10.011(7) does not distinguish between the three types of evidence that trigger the presumption. Each is a sufficient basis to establish that the child is at substantial risk of sexual abuse. And once the presumption is established and the court proceeds to consider any evidence rebutting it, nothing in the statutory text requires the court to expressly acknowledge that being under investigation of sexual abuse of a minor is not as powerful evidence of risk as having been convicted.[11] Nor does the statute expressly require, when the person is under investigation of sexual abuse of a minor, that the superior court make findings about the credibility of the abuse allegations or whether the abuse being investigated actually occurred.[12] For that reason, Cynthia's argument that the superior court erred by failing to make these findings is unavailing.

Equally unavailing is OCS's argument that statutory presumption shifted the burden of proof to Cynthia. Unless the statute establishing a presumption provides otherwise,

> a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.[13]

---

[10]     (...continued)
unanimity requirement); *Roberts v. State*, 394 P.3d 639, 644 (Alaska App. 2017) (discussing the beyond a reasonable doubt standard).

[11]     AS 47.10.011(7).

[12]     *Id.*

[13]     Alaska R. Evid. 301(a).

The showing required to rebut a presumption is "the introduction of evidence sufficient to permit reasonable minds to conclude that the presumed fact does not exist."[14] The commentary to Alaska Evidence Rule 301(a) explains further that an evidentiary presumption under Alaska law operates according to the "bursting bubble" theory: "the presumption vanishes upon the introduction of evidence that would support a finding of the non-existence of the presumed facts."[15] The text of AS 47.10.011(7) does not suggest that the reference to prima facie evidence is meant to be anything other than a "bursting bubble" presumption, so the general rule described above applies here. If OCS introduced sufficient evidence to establish the presumption described under AS 47.10.011(7), and Cynthia then introduced sufficient evidence to persuade a reasonable mind to conclude that Kara was not at substantial risk of sexual abuse, the presumption would "vanish[]"[16] and it would fall to the superior court to consider all the evidence and decide, as a factual matter, whether OCS proved that Kara was at substantial risk.

This is the approach the superior court appears to have followed. It first found that Joel was under investigation for sexual abuse of a minor and that Cynthia had left Kara with Joel. It then considered evidence pertaining to whether Cynthia was likely to protect Kara from Joel and whether Kara could protect herself and concluded this evidence did not negate the risk. It ultimately found by a preponderance of the evidence that Kara was a child in need of aid under AS 47.10.011(7). The superior court did not err in applying AS 47.10.011(7).

---

[14] *Id.*

[15] Alaska R. Evid. 301(a) cmt.

[16] *Id.*

**B.** **The Superior Court Did Not Clearly Err By Finding That Kara Was At Substantial Risk of Sexual Abuse.**

The only issue remaining is whether the court properly found that Kara was at substantial risk of sexual abuse by Joel. A finding of substantial risk is a finding of fact that we review for clear error.[17] Cynthia argues that the evidence she presented at trial rebutted the "limited evidence" that OCS used to establish the presumption and requires the conclusion that Kara was not at substantial risk. We consider this evidence and conclude that it was not clear error to find that Kara was at substantial risk of sexual abuse by Joel.

**1.** **Cynthia's testimony**

Cynthia argues that the court should have given more weight to her promise to the court that she would ensure Kara would never be left alone with Joel, because Cynthia was unemployed and would therefore always be present in the home. But the court was not required to give this testimony much weight. First, the court could reasonably conclude that Cynthia would not be able to actively monitor Kara every minute of every day, including while Cynthia slept. If Kara and Joel continued to reside in the same home — a living situation Cynthia was apparently unwilling to alter — the court could reasonably conclude that there would be opportunities for private contact between Kara and Joel.

---

[17] *See ,e.g.*, *Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 793 (Alaska 2019) ("Whether [mother's] unremedied mental health issues created a substantial risk of physical injury to her children was a factual determination."); *Ralph H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 246 P.3d 916, 921 (Alaska 2011) ("[W]hether returning the child to the parent would place the child at substantial risk of physical or mental injury [is a] factual determination[] and will only be reversed for clear error." (citing *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1250 (Alaska 2010))).

Second, the inconsistency between Cynthia's representations to the court and OCS and her conduct outside of the courtroom also gave the superior court ample reason to doubt her credibility. For example, Cynthia never told OCS that she and Kara had moved in with Joel even after she agreed to a safety plan restricting contact with "unsafe individuals" and after OCS repeatedly expressed concern about contact with Joel. And despite Cynthia's repeated suggestion at the writ of assistance hearing that she would not hide Kara from OCS, Cynthia appears to have done exactly that when she told the troopers executing the writ that Kara was not at home, when in fact Kara was hiding in the basement. Finally, despite describing Kara's mental health struggles as one of her "main concerns" at the writ hearing, Cynthia never followed through on her family therapy appointments, despite OCS's efforts to assist her.

On appeal, the superior court's underlying "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[18] Based on the conduct described above, it was not clearly erroneous for the court to find that Cynthia demonstrated both an "unwillingness to recognize the risk to" Kara and a "willingness to lie and violate court orders . . . to prevent those charged with protecting [Kara] from doing so." In light of these numerous issues with Cynthia's credibility, it was not clear error to disbelieve Cynthia's promise to prevent contact between Kara and Joel.

### 2. Kara's ability to protect herself

Cynthia argues that the court should have given more weight to Kara's testimony "that she could remove herself from unsafe situations and that she could report any concerns for her safety." Cynthia believes that this testimony undercuts the superior court's finding that Kara was unable "to self-protect when faced with an emotionally

___

[18] Alaska R. Civ. P. 52(a).

difficult situation." To support this argument, Cynthia points to a social media video posted by Kara in which she called Joel a "pedophile." Cynthia argues that this video "demonstrated that [Kara] was not intimidated by Joel and that she refused to submit to his authority."

Kara's testimony and conduct support the superior court's finding that Kara might not be able to protect herself "when faced with an emotionally difficult situation." Although Kara rejected the notion that Joel was a father figure to her, she described him as "the man in the house," implying that she viewed him as a male authority figure. The court could have inferred from this statement that Joel's position of authority in the home might give him an opportunity to wield influence over Kara.

The court also reasonably relied on Kara's reaction when she was removed from the home by OCS, when she began kicking, screaming, and banging on the windows of the troopers' vehicle "to the point where she was a danger to herself and to others," and the troopers had to call for backup to restrain her. During the course of this incident Kara also bit an officer and slammed her head against the window of the vehicle. Given Kara's reaction, the superior court could have reasonably inferred that Kara would be unable to protect herself from Joel: either because she lacked the ability to control herself in a stressful situation or because her fear of being removed from the home (the likely result of reporting any advances by Joel) was stronger than her interest in self-preservation.

Finally, the social media video is not such convincing proof of Kara's lack of deference to Joel that it defeats the court's finding. Although Kara called Joel a pedophile on video and posted this video to social media, Kara was not alone with Joel at the time. Kara might have felt empowered to stand up to Joel when her mother could observe what was happening, but she may not have been so inclined if she and Joel were alone. "Conflicting evidence is generally insufficient to overturn the superior court, and

we will not reweigh evidence when the record provides clear support for the superior court's ruling."[19]   Although the video could support the inference that Kara had the wherewithal to protect herself, it is not enough to overturn the superior court's finding, which is supported by Kara's testimony and her conduct when she was removed from Cynthia and Joel's home.

### 3.    Kara's level of comfort around Joel

Cynthia argues that Kara's risk of sexual abuse is lower because Kara testified that she was never uncomfortable around Joel and that they usually avoided each other.  However, Kara's testimony about Joel is contradicted by her statement on video that "my mom is dating a pedophile and making me live with him."  The superior court could have weighed the video against Kara's testimony and concluded that this statement was a more truthful account of what Kara believed about Joel; this is especially so where the statement she made on video arose spontaneously, in reaction to a fight with her mother.[20]   It was not clear error to find Kara's statements in the video to be more convincing than her statements at the disposition hearing.

### 4.    Lack of evidence of prior abuse or grooming by Joel

Cynthia claims that the lack of evidence showing that Joel abused or groomed Kara rebuts the presumption of substantial risk.  But AS 47.10.011(7) does not require evidence of past sexual abuse of the child in question, only that a parent allows

---

[19]     *Maisy W. v. State,  Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008) (footnote omitted).

[20]     *Cf. State v. Agoney*, 608 P.2d 762, 764 (Alaska 1980) (reasoning that "spontaneous, excited, or impulsive" utterances warrant "special trustworthiness" because "the observer's normal powers of reflection and conscious deliberation have been suspended").

the child to be around a person under investigation for "a sex offense against *a* minor."[21] The statutory presumption would be largely meaningless if it could be rebutted simply by pointing to a lack of evidence that the person tried to abuse or groom the child in question. The superior court did not err by failing to mention this lack of evidence in its analysis.

### 5. Kara's age relative to the age of Joel's alleged victims

Cynthia also claims that because Kara was several years older than the children Joel was alleged to have abused, the court should have inferred that the risk of sexual abuse he presented to Kara was lower. This argument lacks support in the text of AS 47.10.011(7) and also contravenes our decisions holding that a court may find a child at substantial risk of sexual abuse even though the only evidence presented involved abuse of children of different sex. For example, in *In re P.N.* we rejected a parent's argument that a finding that he had sexually abused his ten-year-old daughter could not support a finding that he posed a danger to his younger sons.[22] Then in *Rowan B.*, we affirmed the logic of *In re P.N.* and rejected a parent's argument that the trial court erred by finding the parent's sons to be at substantial risk of sexual abuse based on his

---

**21** AS 47.10.011(7) (emphasis added); *see also Rowan B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 320 P.3d 1152, 1158 (Alaska 2014) ("[W]hen a trial court finds a parent has sexually abused one child in the household, the court may presume that other children in the household are at substantial risk of sexual abuse."). Although *Rowan B.* involved children in the same household, its underlying logic supports applying the presumption even when the child is not in the same household as the abused child. *Id.*

**22** 533 P.2d 13, 16 (Alaska 1975) ("[T]here is support for a finding of dependency in that the appellant's treatment of the girl could be considered to have evidenced such a serious disregard of parental responsibilities and lack of social and moral values on appellant's part as to pose a substantial risk to the physical and emotional well-being of the boys as well as the girl.").

abuse of a female child.[23] Accordingly, the superior court can reasonably conclude that a person who is under investigation for sexual abuse of a minor poses a substantial risk to other minors notwithstanding differences in age and sex between the minors in question. The court in this case did not err by declining to distinguish between Kara's age and the age of Joel's alleged victims when finding that Kara was at substantial risk of sexual abuse.

### 6.    Totality of the evidence

Cynthia argues that when viewed in its totality the "evidence was sufficient to rebut the statutory presumption created by AS 47.10.011(7)." But her emphasis on rebutting the presumption is misplaced. Although a presumption may vanish upon introduction of contradictory evidence offered in rebuttal, the evidence originally supporting the presumption does not.[24] The superior court relied on the evidence of Joel's indictment for sexual abuse of a minor in finding by a preponderance of the evidence that Joel presented a substantial risk of sexual abuse to Kara. Given the nature and proof of Joel's indictment, Cynthia's dubious representations to the court and OCS, her refusal to change her living situation, and evidence of Kara's psychological vulnerability, it was not clear error to find that Kara was at substantial risk of sexual abuse. The court therefore properly concluded that Kara was a child in need of aid.

## IV.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[23]    320 P.3d at 1158-59 ("If on remand [the parent] still is under investigation or subject to criminal charges for sexual abuse of a minor, the trial court may apply the statutory presumption that [the sons] are at substantial risk of being sexually abused.").

[24]    *See* Alaska R. Evid. 301(a) cmt.