NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| MADISON F. MORGAN, f/k/a Madison F. Boyd, | ) ) ) | Supreme Court No. S-18614 |
| Appellant, | ) ) | Superior Court No. 3PA-20-01301 CI |
| v. | ) ) ) | MEMORANDUM OPINION AND JUDGMENT* |
| TRAVIS J. BOYD, | ) ) | No. 2044 – August 28, 2024 |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Christopher M. Cromer and Jon E. Wiederholt (limited appearance for oral argument), Aglietti, Offret, & Woofter, LLC, Anchorage, for Appellant. Notice of nonparticipation filed by Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

A man and woman divorced after a brief marriage. They divided their marital property in their petition for dissolution, directing that the man receive a pickup truck the couple owned. The court accepted their petition and issued a dissolution decree, incorporating the property division. The woman then moved to modify the

---

\*       Entered under Alaska Appellate Rule 214.

property division, arguing it was inequitable for the truck to be allocated to the man and requesting it be awarded to her instead.  The court denied her motion, and the woman stopped making loan payments on the truck.  The man filed a motion to enforce the property agreement, but the truck was repossessed before the court ruled on his motion.  After two hearings, the superior court granted his motion and required the woman to make an equalization payment to the man for the value of the truck.  The woman appeals, arguing the superior court erred when it entered the dissolution decree, in its interpretation of the property settlement agreement, and in determining the fair market value of the truck.

Most of the woman's arguments have not been preserved for our review.  We affirm the superior court on the single issue that was preserved:  the fair market value of the pickup truck.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Madison Morgan and Travis Boyd married in August 2016 and petitioned for dissolution in February 2020.[1]  Their petition allocated their marital property, the most significant of which were a 2015 Jeep Grand Cherokee, a 2012 Dodge 3500 pickup truck, and a travel trailer.  The petition specified that the Jeep and travel trailer would be allocated to Madison and the truck to Travis.

The petition also indicated Madison would keep her 401(k) retirement account with a balance of nearly $14,000 that was "being paid now" because "[Madison] worked hard for this and still pays the truck payment."  The parties also agreed that Madison would assume the debt on two credit cards amounting to almost $17,000 as well as her own student loan debt of approximately $23,000.

---

[1]     Neither Madison nor Travis was represented by an attorney when they petitioned for dissolution, but Madison is represented in the present appeal.

Both parties stated at a dissolution hearing in May 2020 that they were "satisfied with" the division of the property. They agreed each would keep their own retirement and pension benefits.[2] Neither requested spousal support. They confirmed that there were no debts other than those listed, that there were no other agreements, and that they each believed the petition reflected a "fair and equitable division of the property." The court incorporated the petition's property distribution into its dissolution decree.

### B. Proceedings

#### 1. Madison's motion to modify the property division

Madison filed a motion to modify the property division less than a month after the decree was issued. She asked to be awarded the pickup truck because Travis was in jail, and she was "still [paying] for the truck and no longer want[ed] to make the payments and sell the vehicle." Travis opposed. He argued that their agreement that "she pay for the truck and I maintain possession was agreed upon . . . multiple times" and accused Madison of trying to take advantage of his short time in jail to get out of the agreement.

A superior court master held a hearing on the motion in August 2020. Madison testified that she "just [did not] want to make the payments anymore." She asked the court to order Travis to refinance the truck in his name, but she also said that "if he cannot afford it, I can take it back, whichever." When the court asked her to clarify whether she wanted Travis to be ordered to refinance the pickup in his name or to have the truck awarded to her, Madison answered only "yes."

The court asked Travis why he opposed Madison's motion. Travis stated that he and Madison had agreed he would keep the truck and she would make the loan

---

[2] Travis appears to have listed his military retirement and disability benefits as his primary source of income.

payments in lieu of him requesting spousal support or "any kind of financial about the house."[3]

The court explained that it could not modify its earlier order unless there had been a change of circumstances. Madison testified that "things ha[d] tremendously changed" between her and Travis and that he was abusive both during and after the marriage. She also testified that because she had obtained a domestic violence protection order against Travis, they could no longer communicate about the truck except through an attorney or by email, and that she did not feel comfortable communicating with him at all.

Madison conceded that she had agreed to make the payments and that Travis would get the truck. But she asserted that she and Travis had actually made a verbal agreement that she would make the payments only if their relationship remained amicable. And she testified that she had asked Travis to contribute to the loan payment but he had refused.

The court questioned Madison about why she stated in the petition that she would receive all of her retirement benefits because she "worked hard for it" and "still makes the truck payments" if she did not intend to make the payments. Madison asserted that she did not know why but it was "probably just to let the court know that I'm still paying a lot of money on the truck."

The master recommended that the superior court deny Madison's motion to modify the property division. She concluded that without the truck Travis would "not achieve the equity that was envisioned when the Petition was filed." And the master found that Madison was not credible when she testified she "didn't know" why she wrote in the petition that she would continue to pay for the truck.

_____

[3] Travis owned a home before the marriage that went into foreclosure in January 2020.

The master applied contract principles to interpret the property settlement incorporated into the dissolution decree, noting that the goal was to "give effect to the reasonable expectations of the parties." The master observed that the reason given in the petition for why the property agreement was equitable was that Travis had agreed not to seek a share of Madison's retirement benefits as long as he received the truck. She found that Travis was credible when he testified that he "entered into the agreement believing that [Madison] would continue to pay for the truck until ownership could be transferred . . . ." She noted that this agreement appeared fair given the income disparity between the parties, even though it was unclear from the petition, evidence, and testimony how long Madison was to make the payments. But she found that "extrinsic evidence as well as the four corners of the Petition for Dissolution supports an agreement for [Madison] to make payments towards the Dodge." The master also found that even if they attempted to sell the truck, Travis would not receive his part of the bargain. The master therefore recommended that the motion to modify be denied.

On January 11, 2021, Madison, by then represented, filed objections to the master's report, describing her objections in one sentence each. On January 25 Madison again filed objections to the master's report, this time providing a "more detailed analysis" of her objections. Four days later the superior court adopted the master's report in full. Madison moved to set aside the findings adopted by the court, arguing it had not considered her elaborated-on objections. In response, the court denied Madison's motion. In a subsequent order the court clarified its reasons for denying the motion. The court concluded that Madison's January 11 objections had been timely as required by Civil Rule 53(d)(2). But it found the objections unpersuasive. And the court found that the January 25 objections with the "detailed analysis" were not timely, noting that "the fact that Plaintiff filed a shortened version of her objections within the filing deadline did not preserve her right to elaborate on those objections . . . without leave of the Court."

## 2.    Travis's motion to enforce the property division

In June 2021 Travis filed a motion to enforce the property division in the dissolution decree.  He asked the court to order Madison to make the truck payments, and informed the court that Madison had "told the bank she would not be making any further payments."

Madison opposed the motion, arguing that her retirement account was only worth about $6,000, not the $14,000 listed in the dissolution petition, and that it would be unfair to allow Travis to receive the truck as a "windfall" in exchange for his portion of Madison's retirement.  She claimed their agreement about the truck was a temporary "concession" due to Madison's financial condition at the time.  She stated she had agreed to pay for the truck only until Travis was able to refinance it, and asserted that because he had been in jail, he had lost his job and could not refinance it.  Madison also submitted an affidavit stating that she was on medical leave due to surgery and could no longer afford the truck payments or insurance.

A superior court master held a hearing on the motion to enforce in September 2021.  Travis testified that the truck was about to be repossessed; Madison testified that she had not made a payment in 180 days, and that she would be unable to make any kind of payment to Travis or on the loan.

Noting that the Jeep and trailer Madison had received were worth about $37,000 the master asked Madison's attorney to explore whether Madison would be willing to make an equalization payment to Travis, characterizing this as "some other form of equitable relief."  The master also encouraged the parties to work together to reach an agreement with the credit union holding the note on the Dodge to avoid repossession.  The master set a 14-day deadline for Madison's counsel and Travis to inform the court whether they had reached an agreement with the credit union.

When they did not reach an agreement with the credit union, the master issued recommendations and findings in January 2022.  The master recommended

granting Travis's motion to enforce the property settlement agreement, and ordering Madison to continue to make the payments or to pay Travis an amount equal to the truck's value.

Madison filed objections to the master's report, moved to set aside the property division, and requested a hearing on reformation or in the alternative "clarification of enforcement" in February 2022. She primarily argued that the pickup had been repossessed at that time and it was therefore impossible to make payments; she also asserted it would be improper to require her to make any payment to Travis because their agreement was that Madison would make the payments on the loan until Travis could "take over" the payments. She also argued that the truck's "actual value [was] not known" because the parties no longer had the vehicle in their physical control to determine its value. After being repossessed, the pickup had been sold at auction for $28,945.

The superior court remanded the case to the master to determine the fair market value of the truck, and a brief evidentiary hearing was held in May 2022. The parties agreed that they would submit written argument and evidence of the truck's fair market value after the hearing. Both parties also presented evidence at the hearing, primarily by identifying options on the pickup, describing its appearance, and describing its condition.

Madison and Travis each submitted evidence of the fair market value following the hearing. Madison submitted a "Notice to Court" with two exhibits: an article discussing higher used car prices in Alaska due to the pandemic and a letter from the bank explaining what it had done with the funds it received for the repossessed truck at auction — including an "equity" payment of roughly $2,000 to Madison. She also argued again that Travis "clearly" did not expect her to pay off the entirety of the pickup loan. Madison argued that if the court decided to award anything to Travis it should be only the approximately $2,000 that she had received following the repossession auction.

Travis submitted evidence including Kelley Blue Book pricing for the same make and model pickup truck, which estimated a $31,369-$36,314 price range in a private party sale, or $33,900 for an average "private party value." Travis also submitted used vehicle listings for pickup trucks of a similar age, make, and model, including one for the repossessed truck which had apparently been listed for sale for $35,500 after it was purchased at auction.

The master issued a Report and Order on Remand in November, which the superior court adopted later that month. The court found that the truck's fair market value was $33,900. It reasoned that vehicles sold at auction are "regularly" sold under value, and if Travis possessed the vehicle at the time of the court's order it would be worth approximately $33,900. It then concluded that Travis should receive the benefit of the asset contemplated by the original agreement, after expressing concern that Travis had "lost the only asset that was awarded to him" due to the pickup's repossession. The court ordered Madison to pay $33,900 to Travis to equalize the division of their assets.

Madison filed a motion for reconsideration, which the court denied. Madison appeals only from the order granting Travis's motion to enforce.

## III.    STANDARD OF REVIEW

We review the superior court's enforcement of a property settlement incorporated in a dissolution decree for an abuse of discretion.[4] "Abuse of discretion exists when a decision is 'arbitrary, capricious, manifestly unreasonable, or . . . stem[s] from an improper motive.' "[5] "A master's findings adopted by the superior court are

---

[4]    *McCarter v. McCarter*, 303 P.3d 509, 512-13 (Alaska 2013).

[5]    *Id.* (alterations in original) (quoting *Morris v. Horn*, 219 P.3d 198, 203-04 (Alaska 2009)).

considered the findings of the superior court."[6] We review the superior court's factual findings for clear error.[7] "A finding is clearly erroneous if we are 'left with a definite and firm conviction that the trial court has made a mistake.' "[8]

## IV. DISCUSSION

Madison makes a number of arguments on appeal. She argues the superior court erred by adopting a "speculative" value for the pickup Travis was awarded. She contends the superior court erred by concluding the property agreement was fair and equitable when it incorporated the agreement into the dissolution decree. She argues the court erred by failing to resolve her contract defenses in its January 2022 order and failing to credit her for payments made on the pickup loan and insurance. She also argues that the court erred by failing to examine the "necessities and circumstances of each party" as required by AS 25.24.160, in its credibility determinations, by overlooking Travis's "violations to Alaska's implied covenant of good faith and fair dealing," and by "distributing marital assets and liabilities based on credibility rather than equity."

Because Madison did not appeal the dissolution order or the order denying reconsideration, those arguments have not been preserved for our review. And the superior court did not abuse its discretion by adopting the Kelley Blue Book value of the truck as its fair market value when granting Travis's motion to enforce. We therefore affirm the superior court's valuation.

Madison argues that it was inappropriate for the court to refer to the Kelley Blue Book value because "[t]he Dodge's realistic value was unknown until later sold at

---

[6] *In re Adoption of S.F.*, 340 P.3d 1045, 1047 (Alaska 2014); *see also* Alaska R. Civ. P. 52(a).

[7] *McCarter*, 303 P.3d at 513.

[8] *Stockton v. Stockton*, 532 P.3d 735, 738 (Alaska 2023) (quoting *Rohde v. Rohde*, 507 P.3d 986, 992 (Alaska 2022)).

auction by the lender" following repossession. She seems to argue that the auction sale price must be the fair market value. We are not persuaded.

We have previously recognized that the court may consider evidence such as Kelley Blue Book value estimations to determine the fair market value of a used vehicle.[9] In *Ethelbah v. Walker* we concluded it was not erroneous to adopt a Blue Book value where the court was faced with conflicting evidence about the value of a vehicle.[10] One party's evidence suggested a valuation based on the Blue Book, and the other party based their valuation upon their own opinion and lack of success in selling the vehicle on the private market.[11] We reasoned that the superior court made a credibility determination in adopting the Blue Book valuation,[12] and we defer to the superior court's assessment of witness credibility.[13] And we have never concluded as a matter of law that when an asset is sold at auction, the auction sale price must also be considered the "fair market value" of that particular vehicle.

The record provides support for the superior court's valuation. Along with the Kelley Blue Book report, Travis submitted private Facebook Marketplace listings of similar, though not identical, Dodge pickups — including the listing for the repossessed truck. The prices for similar vehicles ranged from $34,000 to over $50,000, but most were approximately $35,000. In contrast to the documents establishing prices for vehicles including the one at issue, Madison submitted an article describing high used vehicle prices amid the pandemic and a letter from the credit union providing details of the repossession sale. And in her written argument about fair market value,

---

[9] *See Ethelbah v. Walker*, 225 P.3d 1082, 1093 (Alaska 2009).

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *See State v. Grubb*, 546 P.3d 586, 603 (Alaska 2024).

Madison argued that the court should not assign any value to the truck, and instead should award Travis, at most, the approximately $2,000 in "equity" that remained following the sale.

The evidence before the court suggested that a fair market value for the pickup would fall within the range of approximately $31,000 to $36,000. The Kelley Blue Book's "private party value" of $33,900 was within that range — and was lower than the price at which the repossessed truck was actually listed. It was also lower than the price of any of the listings Travis provided. And while the article that Madison submitted indicated that used vehicle prices were inflated due to the pandemic, the fact that some evidence in the record did not support the court's conclusion does not mean the court clearly erred.[14] Given that we have previously recognized that Kelley Blue Book valuations are appropriate evidence to consider when determining the value of used vehicles[15] and that the record supports the court's conclusion, the court did not clearly err by setting the pickup truck's fair market value at $33,900.

## V.    CONCLUSION

We AFFIRM the superior court's order granting Travis's motion to enforce.

---

[14]    *Cynthia W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 497 P.3d 981, 987 (Alaska 2021) ("Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling." (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008))).

[15]    *See Ethelbah*, 225 P.3d at 1093. The superior court's assumption that vehicles are "routinely" sold under value appears unsupported in the record, but the record still supports the superior court's ultimate conclusion.